# **EXHIBIT A**

## **to Complaint**

# AUTHORIZED RESELLER AGREEMENT

**THIS AUTHORIZED RESELLER AGREEMENT** (this "Agreement") is entered into as of the 22nd day of June, 2022 (the "Effective Date"), by and between PROMARKCO, Ltd., an Arkansas corporation ("PROMARKCO") and Pattern Inc., a Utah corporation ("Pattern"). PROMARKCO and Pattern are individually referred to as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, PROMARKCO is the manufacturer and marketer of the Inflatabull floatation device (the "Product"); and

**WHEREAS**, PROMARKCO sells the Product both through direct online sales to customers, and through sales to resellers who resell the Product to consumers; and

**WHEREAS**, Pattern is an online retailer and possesses certain expertise with respect to the sale of products on those retail websites listed on <u>Exhibit A</u> hereto (the "Retail Platform"), including with respect to content management, listing management, product feedback management, search engine optimization, advertising management and unauthorized seller compliance; and

**WHEREAS**, PROMARKCO wishes to engage Pattern to (i) be the exclusive reseller of the Inflatabull branded Product on the Retail Platform, and (ii) to provide certain other services related to the marketing and sale of the Product on the Retail Platform;

**NOW, THEREFORE**, in consideration of the promises made and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**1.** <u>Services</u>.  During the Term (as defined herein) and subject to the terms and conditions of this Agreement, Pattern shall perform the following services (collectively, the "Services"):

(a) <u>Exclusive Product Reselling</u>.  Pattern shall resell the Inflatabull branded Product on the Retail Platform, on behalf of PROMARKCO. In accordance therewith, PROMARKCO hereby appoints Pattern, and Pattern hereby accepts the appointment, to act as the exclusive reseller of the Inflatabull branded Product on the Retail Platform. The Parties understand and acknowledge the difficulty on the part of PROMARKCO in ensuring strict exclusivity. Accordingly, the exclusivity granted to Pattern pursuant to this Section 1(a) shall be interpreted as an agreement by and obligation of PROMARKCO to, for the entirety of the Term, (i) not sell, on its own behalf or through any affiliate, any Inflatabull branded Product on the Retail Platform, (ii) not grant to any party other than Pattern the right to resell the Product on the Retail Platform, and (iii) use commercially reasonable efforts to ensure and maintain Pattern's rights of exclusivity.

4835-9345-6742\8

DocuSign Envelope ID: A5661DB2-8F9E-40G7-A424-AF56A27A56B9
Case 2:25-cv-00427-TS-CMR   Document 2-1   Filed 05/29/25   PageID.10   Page 3 of 17

**Authorized Reseller Agreement**
**Page 2**

(b) <u>Retail Platform Content Management</u>. Pattern will manage all of Inflatabull's Product content on the Retail Platform, subject to the direction of PROMARKCO. This includes managing images, descriptions, and other associated content.

(c) <u>Retail Platform Listing Management</u>. Pattern will manage all of PROMARKCO's Inflatabull Product listings on the Retail Platform. This includes activities such as duplicate listing identification and removal, and other associated listing management activities.

(d) <u>Product Feedback Management</u>. Pattern will drive and manage Inflatabull Product feedback through the Retail Platform. This includes using commercially reasonable efforts to provide continued accurate feedback, increase overall positive product reviews, and perform other activities intended to build successful Product reviews.

(e) <u>Search Engine Optimization</u>. Pattern will perform search engine optimization services to drive the Inflatabull Product line with regard to the Retail Platform search functions.

(f) <u>Sales and Retail Platform Ranking</u>. Pattern will manage activities to drive the overall sales and product rankings for Inflatabull Product on the Retail Platform.

(g) <u>Unauthorized Seller Compliance</u>. Pattern will provide unauthorized seller compliance services including the following:

   (i) Full access to Pattern's proprietary software (Predict or any successor product) providing compliance reporting, metrics, and unauthorized seller identification.

   (ii) Ongoing research and investigation services providing information about sellers on the Retail Platform unknown to PROMARKCO.

(h) <u>Online Business Intelligence</u>. Pattern will provide regular reporting to PROMARKCO with regard to sales, product management, listing management, demographics, and other information regarding the Inflatabull branded Product as such information becomes available on the Retail Platform, or as reasonably requested by PROMARKCO from time to time.

**2.** **Term.** The initial term of this Agreement will commence on the Effective Date and continue for a period of two (2) years from the Effective Date (collectively, with all renewals, the "Term"). Following the initial term, the Agreement will automatically renew for successive one-year periods unless: (i) the Agreement is terminated in accordance with Section 11 below, or (ii) one of the Parties gives the other Party written notice of non-renewal not less than 60 days prior to the end of the then-current Term.

**Authorized Reseller Agreement**
**Page 3**

3. **Product Orders.**

(a) <u>Orders</u>. Subject to Section 5(d), Pattern will order the Inflatabull Product from PROMARKCO pursuant to PROMARKCO's then-current ordering process, and PROMARKCO agrees to fulfill all such orders. PROMARKCO shall provide written notice to Pattern of any changes or updates to PROMARKCO's ordering process at least 30 days prior to its effectiveness. If Pattern orders Product for which the Retail Platform requires an expiration date, PROMARKCO, in fulfilling such orders, will only ship to Pattern Product with an expiration date greater than or equal to nine (9) months from the date such Product is shipped from facilities of PROMARKCO and it's affiliates. Pattern may, at its discretion and without penalty, cancel any order for Product at any time prior to the date that Product is shipped from facilities of PROMARKCO and it's affiliates in fulfillment of such order.

(b) <u>Pricing</u>. PROMARKCO will sell the ordered Product to Pattern at the price of $51.17 ("Product Price"). The Product Price includes, and Inflatabull is solely responsible for, all costs and expenses relating to packing, transporting, loading and unloading, customs, taxes, tariffs and duties, insurance and any other similar financial contributions or obligations relating to the production and manufacture of the Product, and the delivery of the Product to Pattern's facilities.

(c) <u>Pricing Revisions</u>.

(i) <u>By PROMARKCO</u>. PROMARKCO will provide Pattern 30 days' prior written notice of a revision to Product Price due to changes in a Product's MAP Price. Product Price for any orders placed by Pattern during such 30-day notice period will be calculated using the pre-revision Product Price. Orders pending but not shipped at the time of any change in the Product Price will be priced at the Product Price in effect at the time the order was placed by Pattern. Nothing contained herein shall prevent Pattern from independently setting the price at which it sells the Product on the Retail Platform.

(ii) <u>Due to Retail Platform Fee Increases</u>. Upon increase by the Retail Platform of any fee associated with selling on the Retail Platform, Pattern reserves the right, upon 30 days' prior written notice to PROMARKCO, to adjust Product Price to substantially maintain its same margin as existed before the increase by the Retail Platform. Product Price for any orders placed by Pattern during such 30-day notice period will be calculated using the pre-revision Product Price.

(iii) <u>Yearly Review</u>. Upon the request of either Party, the Parties may meet once per calendar year to review factors underlying the agreed Product Price, including but not limited to, Retail Platform fees, Product return rate, and logistics costs. The Parties will determine

DocuSign Envelope ID: A5661DB2-8F9E-40G7-A424-AF56A27A56B9
Case 2:25-cv-00427-TS-CMR   Document 2-1   Filed 05/29/25   PageID.12   Page 5 of 17

**Authorized Reseller Agreement**
Page 4

whether adjustment to the Product Price is required due to changes in those factors to preserve the Parties' intent under this Agreement.

(d) <u>Shipping</u>. As more specifically set forth in subsection (b) above, PROMARKCO will be responsible for shipping Product from facilities of PROMARKCO and its affiliates to Pattern facilities and shall ship all ordered Product in accordance with the delivery timing and other instructions set forth in the order. Pattern will be responsible for all shipping from Pattern facilities to the Retail Platform facilities and/or other third-party locations.

(e) <u>Payment Terms</u>. Pattern agrees to pay PROMARKCO for ordered Product promptly following the delivery of such Product to Pattern's facilities. Payment for Pattern's Product orders shall be made using Net 90 terms. Payments shall be made using a credit card, ACH or check. PROMARKCO will indicate which of the above methods it prefers and communicate such preference to Pattern in a timely manner.

(f) <u>Returns</u>. PROMARKCO will (i) bear the cost of all Retail Platform fees associated with customer returns and (ii) reimburse Pattern for any customer-returned, non-resellable Product at the Product Price Pattern paid for those Product. Any customer-returned, non-resellable Product for which PROMARKCO reimburses Pattern will only be returned to PROMARKCO at PROMARKCO's request and at PROMARKCO's expense.

(g) <u>Aged Inventory</u>. For Product that remain in Pattern's Retail Platform inventory longer than 180 days ("Aged Inventory"), Pattern may, in its sole discretion (i) return Aged Inventory to PROMARKCO and Aged Inventory shall be repurchased by PROMARKCO at the Product Price for Product comprising the Aged Inventory; (ii) exchange Aged Inventory for new seasonal equivalent of Product comprising Aged Inventory, as applicable, or; (iii) retain Aged Inventory in its Retail Platform inventory, but PROMARKCO shall be responsible for any long term storage or other fees associated with Aged Inventory remaining in possession of the Retail Platform.

**4.     Performance of the Services**.

(a) <u>Negative Covenants</u>. In providing the Services, Pattern agrees that it will not: (i) make any representation, warranty, or claim regarding the Product that is not preapproved, or otherwise in accordance with the directions and authority given to Pattern, by PROMARKCO; (ii) make any representation, warranty, or claim regarding the Product other than those being made at that time by PROMARKCO on its Product labels and/or website, nor use deceptive, misleading, or unethical representations or practices that are detrimental to PROMARKCO or the Product; (iii) alter or modify any Product in any way prior to reselling it on the Retail Platform; or (iv) make any statements, orally or in writing, about the Product that are not approved by PROMARKCO and that can be reasonably expected to violate any regulatory requirement of the U.S. Food & Drug Administration, the U.S. Federal Trade Commission, or the National Advertising Division of the Council of Better Business Bureaus.

   (b) <u>Regulatory Matters</u>.  Pattern shall use commercially reasonable efforts to market and resell the Product, in material compliance with federal, state and local laws and regulations. Pattern shall inform PROMARKCO, as soon as practicable upon receipt of any correspondence (for example, issuance of a warning letter) from governmental regulatory authorities regarding the Product. Pattern shall coordinate with PROMARKCO its response to any regulatory action with respect to Pattern's reselling of the Product. Nothing in this Section 4(b) shall limit Pattern's ability to take action (or inaction) required by applicable law or that may be necessary or advisable for the protection of Pattern's interests, as determined by Pattern in its sole discretion. This Section 4(b) likewise does not require Pattern to take any action that is prohibited by law or by any relevant regulatory authorities.

   (c) <u>Manner of Performance</u>.  Pattern will perform the Services in a professional and workmanlike manner.

**5.** **<u>PROMARKCO's Obligations</u>**.  During the Term, and subject to the terms and conditions of this Agreement, PROMARKCO acknowledges and agrees to the following obligations:

   (a) <u>Availability of the Product</u>.   PROMARKCO will maintain a high standard of Product quality and will promptly alert Pattern of recalls or material supply chain issues.

   (b) <u>Product Promotion</u>. PROMARKCO will cooperate and assist Pattern on sales promotions and other marketing activities for the Product on the Retail Platform. PROMARKCO will fund price adjustments or markdowns to ensure Pattern margin neutrality on any promotional discounts offered by Pattern through the Retail Platform pursuant to Inflatabull's promotions calendar, MAP holidays, or to match promotions in channels other than the Retail Platform.

   (c) <u>Electronic Order Fulfillment</u>.  PROMARKCO will implement and utilize such electronic data interchange system as may be selected by Pattern in its reasonable discretion for the purpose of facilitating electronic order fulfillment and related functions. PROMARKCO agrees to comply with all requirements of such system. PROMARKCO shall be responsible for all customary and reasonable costs of its utilization of the system, provided that such costs are consistent with industry standards.

   (d) <u>Proposition 65</u>.  PROMARKCO shall take all reasonable steps to ensure that the Product is compliant with California's Prop 65 (Cal. Health & Safety Code §§ 25249.5 - 25249.14, et seq,) which prohibits the knowing and intentional exposure of any individual to a chemical known to the State of California to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual. PROMARKCO may comply with Prop 65 ("Prop 65 Compliance") by either: (1) ensuring that the Product does not require a Prop 65 warning or; (2) providing a warning that complies with all requirements of Prop 65 and related regulations. PROMARKCO expressly represents and warrants Prop 65 Compliance with respect to each Product. If PROMARKCO elects to achieve Prop 65 Compliance through the provision of a warning

**Authorized Reseller Agreement**
**Page 6**

(subsection (d)(2), above) that is provided through Retail Platform, PROMARKCO shall in writing provide to Pattern all specifications concerning the warning, including the text, font size, color and content of the warning for display on Retail Platform and any other communication, if any, to be sent to the end customer. Pattern's duties with respect to complying with Prop 65 are expressly limited to adhering with Inflatabull's written directives and instructions concerning warnings and allowing customers to return any Product that PROMARKCO reasonably believes is not Prop 65 compliant for a full refund (including all shipping and handling fees). PROMARKCO shall defend and indemnify Pattern with respect to any claim asserting a violation of Prop 65.

**6.     Product Recalls.**  Product recalls will be managed in accordance with PROMARKCO's then-current product recall policy. All decisions regarding product recalls will be made by PROMARKCO in its sole discretion. PROMARKCO will be liable for all expenses and costs related to a Product recall, including any and all expenses, costs and losses that may be incurred by Pattern.

**7.     Intellectual Property.**

(a)     License.  During the Term and subject to the terms and conditions of this Agreement, PROMARKCO grants a limited, worldwide, non-exclusive, royalty-free, non-transferable right and license to Pattern to use and display the Inflatabull Trademarks (as defined below) for the purposes of (i) selling, marketing and promoting the Product on the Retail Platform, (ii) assuring that the images and descriptions of the Product on the Retail Platform are accurate and up-to-date, and (iii) performing all of its obligations under this Agreement. For purposes of this Agreement, "Inflatabull Trademarks" means Inflatabull's trademarks, service marks, trade dress, Product names and likenesses, designs, logos, trade names, corporate names, and general intangibles of like nature, whether or not registered, including common law rights and registrations and applications for registration thereof, together with the goodwill relating thereto. The Parties shall enter into registered user agreements with respect to the Inflatabull Trademarks pursuant to applicable trademark law requirements in each applicable country. PROMARKCO shall be responsible for proper filing of the registered trademarks under agreement with government authorities with each applicable country (directly or indirectly) where Inflatabull's products are distributed and shall pay all costs or fees associated with such filings. PROMARKCO acknowledges that the Retail Platform may be accessed by persons located outside the United States and that the Product and the Inflatabull Trademarks may be viewable on the Retail Platform by persons outside the United States. PROMARKCO agrees that it will not be a breach of this Agreement for Retail Platform to be accessible in that manner or for the Product and the Inflatabull Trademarks to be viewable in that manner, and PROMARKCO covenants and agrees not to sue Pattern for infringement of the Inflatabull Trademarks, for unfair competition, or any similar claims (collectively, "Infringement Claims") because of such accessibility and viewability. PROMARKCO shall have no obligation, however, to defend or indemnify Pattern against any third-party Infringement Claims arising from those facts and circumstances.

DocuSign Envelope ID: A5661DB2-8F9E-40C7-A424-AF56A27A56B9

**Authorized Reseller Agreement**
Page 7

PROMARKCO shall only have such obligations if the Parties mutually agree in writing to amend this Agreement to expand its territorial scope.

(b) <u>Pattern Website and Customer Lists</u>. PROMARKCO grants Pattern the right to add Inflatabull's name and logo to Pattern's customer list, website, and marketing materials.

(c) <u>Inflatabull Intellectual Property</u>. As between PROMARKCO and Pattern, except for the license granted in Section 7(a), PROMARKCO or its licensors shall be and remain the sole and exclusive owner of all right, title, and interest in and to the Inflatabull Trademarks, including all goodwill existing or generated therein. All intellectual property rights to the Product and Inflatabull Trademarks not expressly granted to Pattern under this Section 7 (together with the Inflatabull Trademarks, the "Inflatabull Intellectual Property") are reserved to PROMARKCO or its licensors. To the extent Pattern acquires any right, title or interest in the Inflatabull Trademarks, Pattern hereby assigns and conveys all such right, title and interest therein to PROMARKCO for no additional consideration. Pattern agrees to not challenge, question, or contest the validity or ownership of any Inflatabull Trademarks. Pattern cannot use any language or display Inflatabull Trademarks in such a way as to create the impression that the Inflatabull Trademarks are owned by Pattern. Except as expressly authorized in this Agreement, Pattern will not use, copy, modify, distribute or transfer, display, sublicense, rent, reverse engineer, de-compile, or disassemble any of the Inflatabull Intellectual Property. Notwithstanding anything in this Agreement to the contrary, all rights and licenses or sublicenses granted to Pattern with respect to the Inflatabull Intellectual Property shall terminate upon the expiration or termination of this Agreement, and upon the date of such termination or expiration Pattern shall immediately cease all use of Inflatabull Intellectual Property, including any modifications of or derivative works based on such Inflatabull Intellectual Property.

(d) <u>Pattern Intellectual Property</u>. Subject to Section 7(c), as between PROMARKCO and Pattern, Pattern shall at all times be and remain the sole and exclusive owner of all patents, processes, software, code, files, technology, templates, designs, advertising concepts, promotional materials, images, text, forms, scripting, trade secrets and know-how of Pattern, including without limitation any of such items that may be created by Pattern in connection with the performance of the Services, including, without limitation, any Deliverables (as defined below) (collectively, the "Pattern Property"). To the extent PROMARKCO acquires any right, title or interest in any Pattern Property, PROMARKCO hereby assigns and conveys all such right, title and interest therein to Pattern. Except as expressly authorized in this Agreement, PROMARKCO will not copy, modify, distribute or transfer, display, sublicense, rent, reverse engineer, de-compile or disassemble the Pattern Property.

(e) <u>Grant of License</u>. Subject to the terms and conditions set forth in this Agreement, Pattern hereby grants to PROMARKCO a personal, non-exclusive, non-transferable, royalty-free license to use, during the Term, any final images or video, Product descriptions, advertising concepts or promotional materials provided to

PROMARKCO by Pattern or publicly displayed by Pattern on the Retail Platform in connection with Pattern's performance of the Services (collectively, "Deliverables"), for Inflatabull's marketing or other such business operations exclusively on PROMARKCO/Inflatabull's website, provided that in no case shall such operations include service bureau use, outsourcing, renting, or time-sharing the Services or Deliverables. PROMARKCO/Inflatabull will have no license to or rights regarding non-final images or videos created by Pattern. Notwithstanding the foregoing or anything herein to the contrary, all rights and licenses granted to PROMARKCO/Inflatabull with respect to Deliverables shall terminate upon the expiration or termination of this Agreement, and upon the date of such termination or expiration PROMARKCO/Inflatabull shall immediately cease all use of Deliverables, including any modifications of or derivative works based on such Deliverables. If termination of this Agreement is two (2) years or more after the Effective Date of this Agreement, a perpetual, royalty-free, non-exclusive license to use the Deliverables may be purchased from Pattern by PROMARKCO/Inflatabull for consideration of $1. If termination of this Agreement is less than two (2) years from the Effective Date of this Agreement, the Parties may collectively and in good faith determine the reasonable, fair market value of the Deliverables. PROMARKCO/Inflatabull will then have the option to purchase from Pattern a perpetual, royalty-free, non-exclusive license to use the Deliverables for the consideration of the fair market value of the Deliverables as determined by the Parties.

(f)    <u>Pattern Rights</u>.  PROMARKCO agrees and acknowledges that application of Pattern's know-how, methodologies and processes is necessary to its production and delivery of high-quality Services and Deliverables. Accordingly, and notwithstanding anything herein to the contrary, PROMARKCO permits Pattern to use, extract, examine, model, manipulate, collate, analyze, reproduce and otherwise use any data or other information that Pattern obtains or acquires through provision of the Services, including, but not limited to, sales information, within the scope of its regular business operations. In the event PROMARKCO or any of its employees or contractors provide to Pattern suggestions or recommended changes with respect to the Services or provide to Pattern the identities of or other information with respect to unauthorized sellers of the Product, Pattern shall have the right, without obligation to PROMARKCO, to apply and utilize such suggestions, recommendations and information in its regular business operations. Pattern shall likewise be free to use any ideas, concepts, know-how and techniques it learns or obtains in connection with the performance of the Services within the scope of its regular business operations.

8.    **Confidentiality**.

(a)    <u>Confidential Information</u>.  For purposes of this Agreement, "Confidential Information" means all know-how, designs, application information, specifications, manufacturing processes, data, formulas, technical information, data sheets, manuals, diagrams, customer lists, financial information, sales methods, sales proposals, business plans and any other intellectual property or proprietary information belonging to a Party or relating to the Party's affairs that is not public information; provided, however, that it

shall not include information or knowledge that (i) is known to the receiving Party or readily available to the receiving Party from another source before receipt thereof from the disclosing Party, (ii) is disclosed to the receiving Party in good faith by a third party who had the right to make such disclosure, (iii) is now or hereafter becomes part of the public domain through no fault of the receiving Party, (iv) is required to be disclosed by law, or (v) is independently developed by the receiving Party, acting alone or with other third parties, without use of Confidential Information of the disclosing Party.

(b)  <u>Non-disclosure</u>.  Subject to the provisions of Section 7(e), both during and after the Term, each of the Parties agrees: (i) to use commercially reasonable efforts to protect the Confidential Information of the other Party from unauthorized use or disclosure and to use at least the same degree of care with regard thereto as it uses to protect its own Confidential Information of a like nature; and (ii) to use and reproduce the Confidential Information of the other Party only for the purposes contemplated by this Agreement.

(c)  <u>Injunctive Relief</u>.  The Parties agree that any breach by either Party or any of its officers, directors, managers, employees, contractors or agents, of any provisions of this Section 8 may cause immediate and irreparable injury to the other Party and that, in the event of such breach, the injured Party will be entitled to seek injunctive relief as well as any and all other remedies available at law or in equity.

(d)  <u>Judicial/Legal Request</u>.  If either Party receives a subpoena or other validly issued administrative or judicial process requesting Confidential Information of the other Party, it shall provide prompt notice to the other of such receipt. The Party receiving the subpoena shall thereafter be entitled to comply with such subpoena or other process to that extent permitted by law; provided, however, that the receiving Party shall use reasonable efforts to minimize such disclosure and to obtain an assurance that the judicial/subpoena recipient shall accord confidential treatment to the Confidential Information.

9.  <u>Representations and Warranties</u>.

(a)  <u>Mutual Warranty</u>.  Each Party represents and warrants to the other Party that: (i) such Party has the full corporate right, power, and authority to enter into this Agreement and to perform the acts required of it; (ii) such Party owns the rights necessary to grant the rights and licenses or sublicenses and fulfill its obligations under this Agreement; (iii) the execution of this Agreement by such Party will not violate any agreement to which such Party is bound; and (iv) when executed and delivered by such Party this Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms.

(b)  <u>Warranty for Product</u>.  PROMARKCO hereby warrants that (i) PROMARKCO has and will convey to Pattern good and valid title to the Product, free and clear of any lien or encumbrance, (ii) the Product shall conform to the specifications at the time of manufacture, shall not be adulterated with any ingredient not listed in the

specifications and shall comply with all laws and regulations applicable to Inflatabull, and (iii) the Product shall not infringe upon the intellectual property rights of any third parties.

(c) <u>Disclaimer of Warranties</u>. THE WARRANTIES GIVEN IN THIS AGREEMENT BY PATTERN WITH RESPECT TO THE SERVICES PROVIDED BY PATTERN ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES AND DELIVERABLES PROVIDED BY PATTERN, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. NOTHING IN THIS AGREEMENT SHALL BE DEEMED A WARRANTY BY PATTERN WITH RESPECT TO THE PRODUCTS OR THEIR MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT.

10. **Indemnification and Insurance**.

(a) <u>By PROMARKCO</u>. PROMARKCO agrees to indemnify, defend, and hold harmless Pattern, its employees, managers, officers, directors, principals, owners and agents, from and against any and all claims, demands, damage, actions, costs, liability, loss and expense (including reasonable attorney's fees) arising out of or relating to: (i) any material breach by PROMARKCO of its obligations under this Agreement, (ii) any product liability or other such claims relating to the Product, and (iii) any claim that the Product, the Inflatabull Trademarks, or any other data or information provided or made available to Pattern pursuant to this Agreement infringes upon the intellectual property rights of any third party.

(b) <u>By Pattern</u>. Pattern agrees to indemnify, defend, and hold PROMARKCO, its employees, managers, officers, directors, principals, owners and agents, from and against any and all claims, demands, damage, actions, costs, liability, loss and expense (including reasonable attorney's fees) arising out of or relating to any material breach by Pattern of its obligations under this Agreement.

(c) <u>Insurance</u>. Pattern agrees to maintain throughout the term of this Agreement, for so long as it is selling the Product, at its own expense, General Liability insurance (including Product Liability insurance) with a limit of insurance of $1,000,000 per occurrence or claim and $1,000,000 in the aggregate. PROMARKCO agrees to maintain throughout the term of this Agreement, for so long as Pattern is selling the Product, at its own expense, General Liability insurance (including Product Liability insurance) with a limit of insurance of at least $1,000,000 per occurrence or claim and at least $1,000,000 in the aggregate. PROMARKCO's Product Liability insurance shall contain a Broad Form Vendor's endorsement which provides additional insured status to its authorized vendors, distributors and resellers. PROMARKCO shall ensure that all insurance policies required of it under this Section 10(c) name Pattern and its affiliates, including, in each case, all successors and permitted assigns, as additional insureds. Each Party shall provide the other Party, within 30 days after the execution of this

**Authorized Reseller Agreement**
**Page 11**

Agreement and annually thereafter, with certificates of insurance evidencing the required insurances described above.

(d) Limitation on Liability. In no event shall either Party be liable for consequential, incidental, indirect or punitive loss, damage or expenses (including but not limited to business interruption, lost business, or lost savings) even if it has been advised of their possible existence, and Pattern's cumulative liability to PROMARKCO, or any other party, for any loss or damages arising out of or relating to this Agreement shall not exceed $1,000,000. The allocations of liability in this Section 10(d) represent the agreed and bargained-for understanding of the Parties.

**11. Termination.**

(a) Termination. This Agreement may be terminated as follows:

(i) By either Party, without cause, upon sixty (60) days prior written notice to the other Party.

(ii) By either Party immediately upon notice to the other if the other Party becomes or is declared bankrupt, becomes the subject of any proceeding related to its liquidation or insolvency (whether voluntary or involuntary) which is not dismissed within ninety (90) calendar days, or makes an assignment for the benefit of creditors.

(iii) By the non-breaching Party, if the other Party breaches any of its material obligations under this Agreement, unless (x) the breaching Party cures the breach within thirty (30) days of receiving written notice from the non-breaching Party of the breach, or (y) the breaching Party begins action to cure the breach within the 30-day notice period and thereafter diligently prosecutes such curative action to completion, if the breach cannot reasonably be cured within the 30-day notice period.

(b) Effect of Termination. Upon the termination or expiration of this Agreement:

(i) All rights granted by the Parties under the Agreement will terminate and revert to the respective Parties.

(ii) Pattern will promptly pay PROMARKCO any unpaid amounts for the Product purchased pursuant to Section 3 or otherwise due under this Agreement.

(iii) PROMARKCO will promptly pay Pattern any unpaid amounts due under this Agreement.

(iv) Each Party will promptly return to the other Party or, at the other Party's request, destroy the other Party's Confidential Information.

(v) Subject to Section 7(e), PROMARKCO will promptly return to Pattern or, at Pattern's request, destroy all Deliverables, including any modifications of or derivative works based on any Deliverables.

(vi)    The relevant sections of this Agreement will remain in effect so that Pattern is permitted to fulfill all orders to customers that have been placed prior to the termination of this Agreement.

(vii)   PROMARKCO will repurchase from Pattern any extra Product previously purchased by Pattern that is not necessary to fulfill orders made prior to the termination of this Agreement. Such Product shall be repurchased by PROMARKCO at the same price and payment terms that Pattern paid for the Product. Pattern will make reasonable efforts to reduce Product inventory prior to the date of termination of this Agreement.

(c)    <u>Survival</u>.  Sections that by their nature are meant to survive termination of this Agreement shall survive termination of this Agreement, including but not limited to, Sections 4(a) and 4(b), 5(d), 6 through 12.

**12.    <u>Miscellaneous Terms and Conditions</u>**.

(a)    <u>Assignment</u>.  Neither Party will assign this Agreement, or any right, interest, or benefit under this Agreement, without the prior written consent of the other Party, which consent will not be unreasonably withheld or delayed; provided, however, that either Party may assign this Agreement, without the need to obtain consent of the other Party, to an affiliate of such Party or to a successor in interest to substantially all of the business of that Party to which the Agreement relates. Pattern may assign, without the need to obtain consent of PROMARKCO, any portion of its obligations under this Agreement to its subsidiaries or affiliates for performance of the Services.

(b)    <u>Governing Law and Forum</u>. This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Utah, without giving effect to principles of conflicts of law. The Parties agree to the exclusive jurisdiction of state and federal courts located in Salt Lake City, Utah. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES EACH HEREBY IRREVOCABLY AND EXPRESSLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE PARTIES' ACTIONS IN THE NEGOTIATIONS, ADMINISTRATION, OR ENFORCEMENT HEREOF OR THEREOF. THE PARTIES ACKNOWLEDGE THAT SUCH WAIVER IS MADE WITH FULL KNOWLEDGE AND UNDERSTANDING OF THE NATURE OF THE RIGHTS AND BENEFITS WAIVED HEREBY AND WITH THE BENEFIT OF ADVICE OF COUNSEL OF ITS CHOOSING.

(c)    <u>Availability of Injunctive Relief</u>.  If there is a breach or threatened breach by a Party of Section 1(a), Section 4, Section 7, Section 8, or Section 11 of this Agreement, it is agreed and understood that the other Party may have no adequate remedy in money or other damages and accordingly shall be entitled to seek injunctive relief and other

equitable remedies; provided, however, no specification in this Agreement of any particular remedy shall be construed as a waiver or prohibition of any other remedies in the event of a breach or threatened breach of this Agreement. No failure, refusal, neglect, delay, waiver, forbearance, or omission by a Party to exercise any right herein or to insist upon full compliance by the other Party with its obligations herein shall constitute a waiver of any provision herein or otherwise limit a Party's right to fully enforce any or all provisions and parts thereof.

(d) <u>No Third-Party Beneficiaries</u>. There are no third-party beneficiaries to this Agreement, and only the Parties and their successors and permitted assigns shall be entitled to enforce it.

(e) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with respect to its subject matter and will be deemed to merge and supersede all prior and contemporaneous agreements, communications, and understandings both written and oral. Unless otherwise provided in the Agreement or subsequent amendments to the Agreement, no amendment to any provision of the Agreement or any subsequent amendments shall be effective unless in writing and signed by both Parties.

(f) <u>Force Majeure</u>. Neither Party will be liable for failure to perform its obligations (except payment obligations) due to unforeseen circumstances or causes beyond the Party's reasonable control, including without limitation, acts of God, riot, embargoes, pandemics, acts of governmental authorities, fire, earthquake, flood, accident, strikes, or inability to secure transmission facilities.

(g) <u>Further Assurances</u>. Each Party will take such action, including, but not limited to, the execution, acknowledgment and delivery of documents, as may reasonably be requested by the other Party for the implementation or continuing performance of this Agreement.

(h) <u>No Waiver</u>. No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving Party.

(i) <u>Notice</u>. Notices, demands, consents, or other communications will in writing and faxed, mailed, or delivered to each Party at the Party's address or e-mail address set below, or at such other address as such Party will have furnished the other Party in writing. Such communications will be deemed effective given the earlier of: (i) when received; (ii) when delivered personally; (iii) one business day after being deposited with an overnight courier service of recognized standing; or (iv) four days after being deposited in the U.S. mail, first class with postage prepaid.

**If to PROMARKCO**

PROMARKCO, Ltd.
Attention: David Dial
P.O. Box 2330, Bentonville, AR 72712 (Mailing Address)
5320 W. Sunset Ave., Suite #150, Springdale, AR 72762 (physical & shipping)
email: wddial3@yahoo.com

**If to Pattern**

Pattern Inc.
Attention: Legal Department
1441 West Innovation Way, Suite 500, Lehi, UT 84043
email: legal@pattern.com

(j)  <u>Execution in Counterparts</u>.  For the convenience of the Parties, this Agreement may be executed in counterparts and each counterpart will be deemed to be an original.

(k)  <u>Relationship of the Parties</u>.  The Parties are and intend to be independent contractors with respect to the Services and nothing in this Agreement will be construed to create a partnership, joint venture, or employer-employee relationship. Neither Party may make any statement or take any position that contradicts anything in this Section.

(l)  <u>Severability</u>.  Whenever possible, each provision of this Agreement will be construed and interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement or the application thereof to any party or circumstance will be prohibited by or invalid under applicable law, such provision will be ineffective to the extent of such prohibition invalidating the remainder of such provision or any other provision of this Agreement or the application of such provision to other parties or circumstances.

[*Remainder of Page Intentionally Left Blank*]

**IN WITNESS WHEREOF**, the Parties have caused this Authorized Reseller Agreement to be executed as of the Effective Date.

**PROMARKCO, Ltd.**

Signature: *Walter David Dial III* (DocuSigned by: F85B8BD88E6B43D...)

Name: Walter David Dial III

Title: President

**Pattern Inc.**

Signature: *Jason Beesley* (DocuSigned by: 805873729A5B468...)

Name: Jason Beesely

Title: Chief Financial Officer

# **EXHIBIT A**

**RETAIL PLATFORM**

**Amazon.com**